**NOT FOR PUBLICATION** [5]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                              :
V. GEORGE AMIRIANTZ              :
                                              :    Civil Action No. 06-1743 (FLW)
           Plaintiff,                     :
                                              :              **OPINION**
      v.                                    :
                                              :
STATE OF NEW JERSEY,        :
                                              :
           Defendant.                  :
_____:

**WOLFSON, United States District Judge:**

    Before the Court is Defendant's motion, pursuant to <u>Fed.R.Civ.P.</u> 12(b)(6), 12(b)(4), and 12(b)(5), to dismiss the Complaint of Plaintiff V. George Amiriantz, *pro se*, for: (1) failure to state a claim upon which relief may be granted; (2) insufficiency of process; and (3) insufficiency of service of process.  Plaintiff, the owner/operator of Atlantic City Transportation Company, filed a Complaint against the State of New Jersey seeking emergent relief and a stay in connection with the State's enactment of the "New Jersey Smoke-Free Air Act", P.L. 2005, c. 383, N.J.S.A. 26:3D-55, *et seq*.  For the reasons that follow, I find that Plaintiff's Complaint fails to state a claim upon which relief may be granted.  Accordingly, Defendant's Motion is granted, and Plaintiff's Complaint is dismissed.

**I.  BACKGROUND**

    On April 13, 2006, Plaintiff filed a two-count Complaint against the State of New Jersey challenging New Jersey's "state wide smoking ban" as "a violation of plaintiff's federal constitution guarantees of Equal Protection under the law."  The "New Jersey Smoke-Free Air

Act" ("the Act"), P.L. 2005, c. 383 (N.J.S.A. 26:3D-55, *et seq*.), as it is properly known, was signed into law on January 15, 2006 and made effective on April 15, 2006.

The Act prohibits smoking in virtually all enclosed indoor places of public access and workplaces and in any area inside or on the grounds of any elementary or secondary school. N.J.S.A. 26:3D-58. The term "indoor public place" is defined under the Act to include a "public conveyance operated on land or water, or in the air" and, thus, includes a taxicab, bus or limousine service. N.J.S.A. 26:3D-57. The Act provides for certain specified exceptions, which include the area within the perimeter of casinos and casino simulcasting facilities. N.J.S.A. 26:3D-59. Plaintiff's challenge to the Act appears to be limited to this "casino exemption".

On April 13, 2006, Plaintiff hand delivered one original and one copy of the Complaint to the State of New Jersey Office of the Attorney General. In lieu of an answer, Defendants filed the instant Motion to Dismiss.

## II. STANDARD OF REVIEW

"In deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff." Ward v. Arm & Hammer, 341 F.Supp.2d 499, 500 (D.N.J. 2004); Continental Ins. Co. of N.J. v. U.S., 335 F.Supp.2d 532, 534 (D.N.J. 2004). See Warth v. Seldin, 422 U.S. 490, 501 (1975); Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc., 140 F.3d 478, 483 (3d Cir. 1998); Robb v. Philadelphia, 733 F.2d 286, 290 (3d Cir. 1984). "The question is whether the claimant can prove any set of facts consistent with his or her allegations that will entitle him or her to relief, not whether that person will ultimately prevail." Continental Ins. Co. of N.J., 335 F.Supp. 2d at 534.

"In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents." Ward, 341 F.Supp.2d at 500-01.  As such, a court "will not accept unsupported conclusions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegation." Continental Inc. Co. of N.J., 335 F.Supp.2d at 534; Miree v. Delkab County Ga., 433 U.S. 25, 27, n.2 (1977).  *Pro se* complaints, however, are held to "'less stringent standards than formal pleadings drafted by lawyers' and can only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  Estelle v. Gamble, 429 U.S. 97, 106 (1976) (quoting Haines v. Kerner, 404 U.S. 519, 520-21 (1972)).

### III. DISCUSSION

Defendant's Motion to Dismiss advances the following two grounds for dismissal under Fed.R.Civ.P. 12(b)(6): (i) failure to assert a basis for jurisdiction in the Complaint as required by Fed.R.Civ.P. 8(a)(1); and (ii) failure to provide a "short and plain statement of the claim" showing that Plaintiff is "entitled to relief," as required by Fed.R.Civ.P. 8(a)(2).  Additionally, Defendant contends that dismissal is appropriate under Fed.R.Civ.P. 12(b)(4), based upon insufficiency of process, and Fed.R.Civ.P. 12(b)(5), based upon insufficiency of service of process.  Plaintiff has responded to Defendant's contentions by conceding that his *pro se* complaint is "poorly constructed", stating essentially that he will correct any deficiencies by amendment upon engagement of legal counsel.

It is well established that a federal court must first determine whether it has subject matter jurisdiction over a case before it can pass on the merits of the case.  Steel Co. v. Citizens for a

Better Env't, 523 U.S. 83, 94-95, (1998).  Thus, the Court turns first to Defendant's jurisdictional argument under Fed.R.Civ.P. 8(a)(1), which rests on Defendant's contention that Plaintiff's claims are barred by the Eleventh Amendment.

The Eleventh Amendment establishes that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity commenced or prosecuted against one of the United States by Citizens of another State, or by citizens or subjects of any foreign state." U.S. Cons. Amend. XI.  Thus, without consent or a waiver of immunity, a federal court cannot exercise jurisdiction over claims brought by an individual against a state or a state agency. Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 99 (1984).  Here, where the State of New Jersey is the only party named in the litigation, it is clear that the Eleventh Amendment is implicated.  "Eleventh Amendment immunity is, however, subject to three primary exceptions: (1) congressional abrogation, (2) waiver by the state, and (3) suits against individual state officers for prospective injunctive and declaratory relief to end an ongoing violation of federal law." Pennsylvania Fed'n of Sportsmen's Clubs, Inc. v. Hess, 297 F.3d 310, 323 (3d Cir. 2002).

Neither the congressional abrogation nor waiver exceptions apply to Plaintiff's challenge to the constitutionality of the Act.  However, the Court finds that had Plaintiff named the individual officials charged with enforcement of the Act rather than the State of New Jersey, the third exception would arguably apply.  The third exception is based upon the doctrine of Ex parte Young, 209 U.S. 123 (1908).

> The theory behind Young is that a suit to halt the enforcement of a state law in conflict with the federal constitution is an action against the individual officer charged with that enforcement and ceases to be an action against the state to which sovereign immunity extends; the officer is stripped of his official or representative character and becomes subject to the consequences of

> his individual conduct. See Young, 209 U.S. at 159-60, 28 S.Ct. 441, 28 S.Ct. 441; see also Pennhurst State Sch. and Hosp. v. Halderman, 465 U.S. 89, 103, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (Pennhurst II) (stating that, under the theory of Young, an action for prospective relief against the state officer was not an action against the state because the allegation of a violation of federal law would strip the officer of his official authority). The relief sought must be prospective, declaratory or injunctive relief governing an officer's future conduct and cannot be retrospective, such as money damages. Pennsylvania Fed'n of Sportsmen's Clubs, 297 F.3d at 323.

"In determining whether the Ex parte Young doctrine avoids an Eleventh Amendment bar, the Supreme Court has made it quite clear that 'a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" Pennsylvania Fed'n of Sportsmen's Clubs, 297 F.3d at 324 (quoting Verizon Maryland, Inc. v. Public Service Comm'n of Maryland, 535 U.S. 635, 645 (2002)). A liberal reading of Plaintiff's *pro se* Complaint reveals that the relief sought by Plaintiff can indeed be characterized as prospective and declaratory. Plaintiff's challenge to the Act focuses on the exemption for casinos and casino simulcasting facilities. Though inartfully plead, it is clear from the whole of Plaintiff's Complaint that he is effectively seeking a declaration from this Court that enforcement of the Act will result in a deprivation of Plaintiff's right to equal protection under the federal constitution.[1]

The problem, however, with application of the Ex parte Young doctrine to this case is that Plaintiff has named the State of New Jersey rather than the individual state officers charged with enforcement of the Act. Given Plaintiff's *pro se* status, the Court would ordinarily give

---

[1] Plaintiff also sought emergent relief in the Complaint in the form of a stay, but has since abandoned that relief as "moot."

Plaintiff an opportunity to amend his Complaint to name the proper parties. However, such an amendment would prove futile, see, e.g., Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000) ("An amendment is futile if the amended Complaint would not survive a motion to dismiss."), because of the more substantive deficiency of Plaintiff's claim, to which I now turn.

Plaintiff's challenge to the Act is grounded in the Equal Protection Clause, which provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV. This is not a command that all persons be treated alike, but, rather, a direction that all persons similarly-situated be treated alike. See City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985). "The Equal Protection Clause commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws.'" Vacco v. Quill, 521 U.S. 793, 799 (1997). "The central purpose of the Equal Protection Clause of the Fourteenth Amendment is the prevention of official conduct discriminating on the basis of race," Washington v. Davis, 426 U.S. 229, 239 (1976), or any other suspect classification. See, e.g., Bakke v. California Bd. of Regents, 438 U.S. 265, 289-90 (1978) ("the guarantee of equal protection cannot mean one thing when applied to one individual and something else when applied to a person of another color" and "racial and ethnic distinctions of any sort are inherently suspect and thus call for the most exacting judicial examination").

Here, Plaintiff does not raise allegations of any suspect classifications, nor does he allege that there is any classification impacting any fundamental rights. Rather, Plaintiff's challenge to the Act appears to relate solely to the difference in treatment the State has given to the casino industry. In short, Plaintiff challenges the State's right "to protect and/or foster the casino's and State's economy . . . to the detriment to others that are not in the protected class." [Plaintiff's Objection to Defendants [sic] Motion to Dismiss, page 3]. Because Plaintiff has failed to allege

any circumstances requiring this Court to apply a heightened level of scrutiny, this Court is obligated to uphold the Act, including the exemption for the casino industry provided therein, so long as it bears a "rational relation to some legitimate end." See Romer v. Evans, 517 U.S. 620, 631 (1996). "State laws that neither employ a suspect classification nor impinge a fundamental right are 'entitled to a presumption of validity against attack under the Equal Protection Clause.'" Schumacher v. Nix, 965 F.2d 1262, 1269 (3d Cir. 1992) (quoting Parham v. Hughes, 441 U.S. 347, 351 (1979). Under rational basis review, "a statutory distinction does not violate the Equal Protection Clause 'if any state of facts reasonably may be conceived to justify it.'" Sullivan v. Stroop, 496 U.S. 478, 485 (1990) (quoting Bowen v. Gilliard, 483 U.S. 587, 601 (1987)).

"The first task of a court in evaluating an equal protection claim under the rational relation test is to identify with particularity the precise classification alleged to be irrational. Obviously, it would constitute an irrational act – and hence would offend the Constitution's promise of 'equal protection of the laws' – were a state to impose differing burdens upon individuals who are, in all relevant respects, indistinguishable." Murillo v. Bambrick, 681 F.2d 898, 906 (3d Cir. 1982), cert. denied, 459 U.S. 1017 (1982). The Court must therefore determine whether similarly situated business entities are treated differently under the Act. Here, Plaintiff challenges the different treatment given to casinos and casino simulcasting facilities under the Act. Presumably, Plaintiff's claim is premised on the theory that the Act's exemption provides an unfair business advantage to casinos, whose patrons are not prohibited from smoking indoors. The problem with Plaintiff's argument is that the Act does not impose differing burdens on similarly situated business owners.

The challenged casino exemption provides that the provisions of the Act shall not apply to:

> e. the area within the perimeter of:
>
> (1) any casino as defined in section 6 of P.L. 1977, c. 110 (C.5:12-6) approved by Casino Control Commission that contains at least 150 stand-alone slot machines, 10 table games, or some combination thereof approved by the commission, which machines and games are available to the public for wagering; and
>
> (2) any casino simulcasting facility approved by the Casino Control Commission pursuant to section 4 of P.L. 1992, c. 19 (C.5:12-194) that contains a simulcast counter and dedicated seating for at least 50 simulcast patrons or simulcast operation and at least 10 table games, which simulcast facilities and games are available to the public for wagering.  N.J.S.A. 26:3D-59(e).

Thus, by its express terms the Act exempts only the area within the perimeter of the gaming area of any casino or casino simulcasting facility.  All casino and casino simulcasting facility gaming areas are treated alike for the purposes of the Act.  Plaintiff, as the owner/operator of a transportation company, simply is not similarly situated to the casino and casino simulcasting facility gaming areas.  The Court therefore turns to whether the Legislature had a rational basis for treating gaming areas differently than other indoor public places under the Act.

Here, the Legislature did not articulate the basis for the different treatment accorded to casinos and casino simulcasting facilities under the Act.  However, the absence of declared legislative intent is not fatal to the Act.  Indeed, "the Equal Protection Clause does not demand for purposes of rational-basis review that a legislature or governing decisionmaker actually articulate at any time the purpose or rationale supporting its classification."  Nordlinger v. Hahn, 505 U.S. 1, 15 (1992).  The court need only find "that a purpose may conceivably or 'may reasonably have been the purpose and policy' of the relevant governmental decisionmaker."

Nordlinger v. Hahn, 505 U.S. at 15 (quoting Allied Stores of Ohio, Inc. v. Bowers, 358 U.S. 522, 528-29 (1959).

In the absence of any articulated legislative intent for the challenged classification, this Court looks to the public policy considerations articulated by the Legislature upon its enactment of the Casino Control Act, N.J.S.A. 5:12-1 *et seq.* and finds that many of the same considerations support the different treatment accorded to gaming areas under the Act. Indeed, the same economic concerns that prompted the Legislature to restrict gaming to Atlantic City in order to promote the City's redevelopment and "provide meaningful and permanent contribution to the economic viability of the resort, convention, and tourist industry of New Jersey" provide rational bases for the different treatment accorded to casino gaming areas under the Act.

Notably, a similar challenge to the Act's casino exemption lodged by the New Jersey Hospitality Coalition for Fairness, *et al*, Docket No. Civ. No. 06-1025, was rejected by the Hon. Stanley R. Chesler, U.S.D.J. on April 13, 2006, when he declined to issue a preliminary injunction on the record at oral argument. Two other courts have also upheld the constitutionality of state smoking ban legislation which provided special exemptions for casinos. See Batte-Holmgren v. Galvin, 2004 WL 2896485, No. CV044000287, (Conn.Super.Ct. Nov. 5, 2004)(finding legislature's concern regarding its inability to enforce the smoking ban at casinos provided a rational basis for their exemption); see also, Coalition for Equal Rights, Inc. v. Owens, 2006 WL 3025831, No. 06-cv-01145, (D.Colo. October 19, 2006)(holding that economic considerations constituted a proper basis for casino exemption).

A Plaintiff challenging state legislation under the equal protection clause "must show that the requirements imposed by law or regulation 'so lack rationality that they constitute a constitutionally impermissible denial of equal protection.'" Anderson v. City of Philadelphia,

845 F.2d 1216, 1223 (3d Cir. 1988).  Plaintiff is unable to overcome that burden here.  Indeed, Plaintiff acknowledges that at least one purpose of the casino exemption is "to protect and/or foster the casino's and State's economy."  [Plaintiff's Objection to Defendants [sic] Motion to Dismiss, page 3].   The Court finds that economic considerations provide a rational basis for the casino exemption.  Thus, Plaintiff's challenge to N.J.S.A. 26:3D-55, *et seq*. cannot withstand Defendants' Motion to Dismiss.[2]

**IV.  CONCLUSION**

I find that Plaintiff's constitutional challenge to N.J.S.A. 26:3D-55, *et seq.* must fail as a matter of law, because Plaintiff is unable to establish that the exemption for casinos and casino simulcasting facilities bears no rational relation to a legitimate governmental purpose.  Accordingly, Defendant's Motion to Dismiss Plaintiff's Complaint for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6) is granted.

An appropriate Order shall follow.

    /s/ Freda L. Wolfson
Honorable Freda L. Wolfson
United States District Judge

Dated: November 16, 2006

---

[2] Because I find that Plaintiff's Complaint suffers from a more serious and substantive deficiency requiring dismissal with prejudice under Fed.R.Civ.P. 12(b)(6), I decline to address whether Plaintiff's failure to properly serve the Complaint warrants dismissal without prejudice.